

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

MAR - 2 2026

CLERK, U.S. DISTRICT COURT
By
Deputy

UNITED STATES OF AMERICA

v.

SINCERITY WILLIAMSON-FIELDS(01)
QUINCY LAVERNE (02)
SAQUAN LEWIS (03)

No. 4:26-MJ- 157

## CRIMINAL COMPLAINT

I, U.S. Postal Inspector Michael Galvez, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

Between in or around September 2025, and continuing through February 2026, in the Fort Worth Division of the Northern District of Texas, the defendants, **Sincerity Williamson-Fields, Quincy Laverne, and Saquan Lewis**, did knowingly conspire and with the intent to defraud a financial institution to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises, all in violations of 18 U.S.C. § 1344 and 1349.

Between in or around September 2025, and continuing through February 2026, in the Fort Worth Division of the Northern District of Texas, the defendants, **Quincy Laverne and Saquan Lewis**, did knowingly conspire and with the intent to commit aggravated identity theft, by knowingly possessing a means of identification of another person, all in violations of 18 U.S.C. § 1028A and 371.

1.      I am a United States Postal Inspector with the United States Postal Inspection Service (USPIS) and have been so employed for over 8 years. I am currently assigned to the Fort Worth Mail Theft/Violent Crimes Team for the Fort Worth Division, and I am

Criminal Complaint - Page 1

responsible for investigating mail theft, robberies, burglaries, access device fraud, and identity theft cases involving the U.S. Mail.

2.    On or about December 10, 2025, I was contacted by Lindsay Ross, Manager, Asset Recovery and Investigations, with Fidelity Investments stating she there was an account belonging to **Sincerity Williamson-Fields ("FIELDS")** which had a fraudulent check deposited in the amount of $45,390.43 into her account at Fidelity Investments, which returned as fraud. Ross stated **FIELDS** also attempted to deposit a second check in the amount of $190,000 but was not successful.

3.    On January 13, 2025, I received the requested records from Fidelity Investments for the account belonging to **FIELDS.** Upon reviewing the records, I observed copies of the initial check that returned as fraudulent, video surveillance of the attempted transaction, and copies of the monthly statements. On September 23, 2025, a check in the amount of $45,390.43 was mobile deposited into the account ending in XX6358. The account statements show the following transactions after the deposit:

   a.  On October 15, 2025, a cash withdrawal in the amount of $13,390.00

   b.  On October 16, 2025, three transactions at Kroger for cash withdrawals totaling $7,815.50

   c.  On October 16, 2025, two Walmart transactions totaling $2,007.48 (video surveillance obtained and reflects **FIELDS** conducting these transactions)

4.    On October 15, 2025, a $25,000 cashier's check was purchased at First National Bank

Criminal Complaint - Page 2

of Texas after the funds were sent via Electronic Funds Transfer (EFT) to **FIELDS** account at National Bank of Texas. This check was negotiated at a PLS Check Cashers, by Dominique Dennis.

5. As part of the records provided by Fidelity Investments, the employment information for **Fields** shows her current employer to be Kroger Co. and a request to Kroger Co. confirmed she is currently still employed. Her place of employment is located in Fort Worth, Texas.

6. On September 23, 2025, **FIELDS** enters a Fidelity Investment Center in Fort Worth, Texas, at approximately 1:22 CST. **FIELDS** is observed on surveillance video provided from the center, for a total of 59 minutes, attempting to deposit a $190,000.00 check, into Fields account ending in XX6358. Surveillance video shows **FIELDS** using two mobile devices before and during the attempted transaction.

7. On February 5, 2026, PI Calvert, PI Sanches, PI Bolduc, and I executed a federal search warrant on FIELDS' person for her mobile device. I informed **FIELDS** of the reason for the search and interviewed her in a noncustodial recorded interview. During the interview, **FIELDS** admitted to knowing why we were there and her role in the

Criminal Complaint - Page 3

depositing of stolen checks into various accounts. **FIELDS** stated she received the checks from "Q" and "Bro" to deposit. **FIELDS** provided the access code to investigators for her cellular device.

8.  **FIELDS** was questioned about the beginning of the scheme and stated she was introduced to "BRO" aka **LEWIS** by "Q" aka **LAVERNE**. While reviewing the cellphone text messages, I located a text string with "LEWIS" beginning October 3, 2025. **LEWIS** messages **FIELDS** "This Q brudda I'm finna neeed code". Based on my training and experience, I believe this to be a reference to need the code sent by a financial institution when logging in via a new digital device to an account.

9.  While reviewing the cellphone belonging to **FIELDS**, I located two separate text message strings with "BRO" and a corresponding phone number of 6825320223 and "Q" with a corresponding phone number of 6824203981.

10.  On February 11, 2026, I conducted a search of a law enforcement database and open-source intelligence identified the phone number 6825320223 belonging to **LEWIS** and 6824203981 belonging to **LAVERNE**.

11.  While reviewing the text message string between **LEWIS and FIELDS**, I observed messages dated 09/23/2025 discussing the deposit of a check. **LEWIS** tells **FIELDS** to state the check was for a settlement from suing a hospital. **FIELDS** states later that day "I'm just finna deposit" to which **LEWIS** responds "Yes". **FIELDS** informs **LEWIS**, Fidelity bank is not like a regular bank to which **LEWIS** responds, "I usually have walkers". Based on my training and experience I know the term "walkers"

Criminal Complaint - Page 4

to mean an individual that is paid a fee to go into financial institutions to deposit stolen and/or altered checks. This is done to conceal the identity of the person doing to recruitment, making/altering checks, and opening fictious bank accounts.

12.    On September 29. 2025, **LEWIS** sends an audio message stating he was willing to meet up with **FIELDS** to help connect **LAVERNE** bank account to facilitate the movement of the funds from the check deposit in the amount of $45K.



Sources (2)

13.    While reading the transcribed messages between **LEWIS** and **Fields,** I observed them communicating about doing some of the withdrawals at the First Convenience Bank, where **Laverne** worked as a bank employee during this period of time.

14.    On June 05, 2025, **LAVERNE** sends a text message stating "All u gotta do is a simple part is give the check or receive the cash we gotta print it buy the stuff to make it buy the check cook it up print it all that takes money you gotta think bout that too like u having 60 racks in yo hands what?". Based on my training and experience, I know individuals that are involved in the scheme of using stolen checks often alter or create an entirely new check to deposit into recruited accounts at financial institutions.

15.    On September 23, 2025, **Laverne** tells **Fields** to "walk it in" or go into the branch to do the deposits. He tells her once the money is in her account there is nothing the bank can do. The teller can't tell her what to do with her account and the funds in it.



16.    On February 20, 2026, a federal search warrant was executed at the residence for **Laverne** and **Lewis** located at 5817 Brookville Dr, Fort Worth, Texas. During the search warrant, U.S. Postal Inspectors located various items including firearms,

**Criminal Complaint - Page 6**

narcotics, and fraudulent items. The fraudulent items include checks, debit cards in the name of **Fields,** debit and credit cards in names other than **Lewis** and **Laverne,** and multiple fraudulent identification cards displaying an image of **Laverne** or **Lewis,** with the personal identifying information (PII) of another person. While at the residence, Detective Bjorklund (FWPD) and I conducted an audio and video recorded interviews of **Laverne** and **Lewis,** after providing each of them with their *Miranda Warnings.* **Laverne** stated he had been buying checks online and had purchased approximately 30 checks. He would purchase them on Telegram and have someone alter the check. Once the check was altered, **Laverne** would receive the check via a pdf file and print it. He also stated he would recruit people and have them deposit the checks. While speaking with **Lewis,** he stated he would also purchase checks on Telegram and have them altered for approximately $50 to $100. Once the checks were made, he would have them deposited by others that were recruited directly by him or from another account holder he had already previously used that would bring someone to assist in the fraudulent transaction. He could not remember all the names he had or people he had previously used. I asked **Lewis** how much he believes he had done in checks after I told him I had located approximately two million dollars in fraudulent activity to which he stated he believes there is about five million dollars' worth of checks on his mobile device that he sent to be altered. **Lewis** stated he would pay roughly 10% of the amount on the check to the Telegram account he purchased the checks from.

**Criminal Complaint - Page 7**

17. On February 23, 2026, during the review of the evidence collected from the search warrant, I located a passport card with an image of **Laverne**, with the PII associated to C.P. along with a social security card ending in XX2861 belonging to Y.C., with the associated name of C.P. Additionally, I located a Pennsylvania Driver's license ending in XX435 with an image of **Lewis** along with PII belonging to C.P.. A records search of the drivers' license located ending in XX435 shows it belonging to another individual M.M.



18. Based on the foregoing, I respectfully submit that there is probable cause to believe **Sincerity Williamson-Fields, Quincy Laverne, and Saquan Lewis**, did knowingly conspire and with the intent to defraud a financial institution to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses,

Criminal Complaint - Page 8

representations, or promises , all in violation of 18 U.S.C. § 1344 and 1349.

19.    Additionally, based on the foregoing, I respectfully submit there is probable cause to believe that **Quincy Laverne** and **Saquan Lewis,** did knowingly conspire and with the intent to commit aggravated identity theft by knowingly possessing a means of identification of another person, all in violation of 18 U.S.C. § 1028A and 371.

Michael Galvez, U.S. Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to before me on this 2ⁿᵈ day of March, 2026 at *1 : 20* a.m./p.m., in Fort Worth, Texas.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

Criminal Complaint - Page 9